(23 Misc. Rep. 100.)

## TOWN OF WHEATFIELD v. SHASLEY et al.

(Supreme Court, Equity Term, Niagara County. March, 1898.)

1. HIGHWAYS—CHANGE OF LOCATION.

A road was established by public user, and afterwards adjoining landowners agreed to certain changes, and increased it to about four rods wide, planting trees on each side of a driveway of three rods. The supervisors afterwards ordered a survey of the road to conform practically to its then location, and ordered that the record of such survey should be the legal record of the road. By reason of an error, the survey as recorded ran entirely to the south of the road. There was evidence that the survey might be so applied that its center line would be one rod from the side of the road as used, by disregarding some of the distances given and referring to outside monuments, but the highway commissioner who assisted in the survey testified that it followed the center of the road as used midway between the trees. *Held*, that the location of the road was not changed.

2. SAME—ASCERTAINMENT OF LOCATIONS.

Under an order of a board of supervisors to locate and define an existing road, and without notice to landowners, they have no authority to change it so as to take private property for public purposes.

3. SAME—OBSTRUCTIONS—SHADE TREES.

Where trees have been lawfully planted and maintained, they are not obstructions, within Laws 1890, c. 568, § 105, authorizing commissioners of highways to remove obstructions or encroachments on highways on notice to the adjoining landowners.

4. SAME—POWER OF COURT TO ORDER REMOVAL.

Under Laws 1890, c. 568, § 105, empowering the court to compel the removal of obstructions on highways at the suit of highway commissioners, extends to only such obstructions as the commissioners are by the former part of such statute authorized to remove, and shade trees lawfully planted in a highway can be removed only by an appropriate proceeding to condemn them, with compensation to their owner.

Action by the town of Wheatfield against Frank Shasley and others. Complaint dismissed.

Harrington & Premus, for plaintiff.

Hopkins & Brim, for defendants.

LAUGHLIN, J.    This action is brought under section 105 of the Highway Law (chapter 568, Laws 1890), which provides that:

"The commissioners of highways shall serve upon the owner or occupant of land adjoining that part of a highway within their town, in which any obstruction or encroachment may exist, a notice specifying the extent and location of such obstruction or encroachment and directing such owner or occupant to remove the same within a specified time, not more than sixty days after the service of the notice. If such owner or occupant shall refuse to remove such obstruction or encroachment within such time, he shall forfeit to the town the sum of $25, and the commissioners may remove such obstruction or encroachment at the expense of the town, which may be recovered by action of such owner or occupant; or such commissioners may bring an action in any court of competent jurisdiction to compel such owner or occupant to remove such obstruction or encroachment. Actions by commissioners of highways as in this act provided, shall be in the name of the town."

The highway nearest Niagara river running through the town of Wheatfield, in Niagara county, between the cities of North Tonawanda and Niagara Falls, is known as the "River Road." The defendant Witmer owns a farm which extends on both sides of the highway, and he also owns the fee of that part of the highway which

thus runs through his farm. The original road became such by public user, and ran through this farm several rods nearer the river bank than the highway as now used. The defendant Shasley occupies the farm as Witmer's tenant. The first record of the original road shows that it was described, recorded, and declared a public highway, three rods in width, by the highway commissioners on the 14th of November, 1854, under the statute authorizing such action with respect to highways that have been used as such for upward of 20 years. On the 26th day of September, 1867, the highway commissioners filed with the town clerk an order, purporting to alter the course of this highway at the points in question, and said order was recorded by the town clerk on February 12, 1868. This order is somewhat indefinite. Experienced surveyors called by the defendants claim to be able to locate the center line of the highway from it, and experienced surveyors called by the plaintiff claim that this cannot be done with a sufficient degree of accuracy to be of any assistance in determining the controverted questions involved in this action. It, however, satisfactorily appears that at about this period of time the property owners along the highway, including the defendant Witmer's grantors, met and mutually agreed upon a change of the route of the highway over their lands. Thereupon the defendant Witmer's grantors opened up the new road to a width of substantially four rods, and upon either side of the graded roadbed at regular intervals, and in line across the entire width of the farm, set a row of shade trees, mostly maple, leaving practically three rods for public travel between them. These trees have grown to be large, ornamental, and useful shade trees, the trunks varying in diameter from 10 to 18 inches. The row of trees on the southerly or river side, consisting of 28, constitutes the alleged obstruction or encroachment which the highway commissioner has, in the form required by the statute hereinbefore quoted, notified the defendants to remove, and for their failure to comply with his order he has instituted this action in the name of the town to obtain a decree compelling them to do so. Fences were erected along the sides of the road nearly four rods apart, about the time the trees were planted, but the fences have been changed and moved so that it cannot be satisfactorily determined whether they were originally erected the same distance from the row of trees on the south as on the north side. The evidence with reference to the line of travel, the grading of the carriage way, and the work done upon the highway by the town authorities, and the probabilities of the case, all indicate that the center of the highway was considered as being midway between these rows of shade trees, both by the public authorities and by the owner of the fee. The Revised Statutes made it lawful for the abutting owners to plant shade trees in the highway, and, at the time that these shade trees were planted and this road was thus dedicated to the public, chapter 93 of the Laws of 1863 was in force, encouraging the abutting owners to plant shade trees in the highways. This statute was amended by chapter 570 of the Laws of 1874, and both were repealed by chapter 568 of the Laws of 1890, but the rights of persons

who had planted shade trees before such repeal are preserved by section 181 of the repealing act, as construed by the court in Edsall v. Howell, 86 Hun, 424, 33 N. Y. Supp. 892. The statute provided that, where a road was three rods wide, shade trees might be planted in the highway so that the centers of the trees should be not more than six feet from the exterior boundaries of the road nearest thereto, and, where the highway was more than three rods in width, then the centers of the trees should be not more than eleven feet from such boundaries. The center line of this highway, as located by the surveyors called by the defendant, acting on the record of 1867, which has been referred to, closely approximates the line midway between these two rows of trees. It will be seen, therefore, that whether this is a three-rod road of which there is a record, or a four-rod highway by dedication and user, the trees were lawfully planted.

On the 22d day of December, 1876, the following action was taken by the board of supervisors concerning this highway, to wit:

"Resolved, that the highway commissioners of the town of Wheatfield be now authorized and hereby directed to cause a survey of the road (through said town), known as the Military (or, as it is sometimes called, the Niagara River) Road, to be made, the center of said road to conform as nearly as practicable to the center of said road as now located, and to be reduced to and made of the uniform width of four rods, and shall cause such survey to be recorded in the town clerk's office, in the town of Wheatfield, and a copy thereof filed in the office of the county clerk of Niagara county, and when such survey is so recorded, it shall be the legal record of said road."

The surveyor, assisted by the highway commissioners, surveyed this highway as directed by said resolution, and such survey was recorded in the town clerk's office on the 5th day of April, 1877. The evidence conclusively shows that no change was made in the roadbed, line of travel, shade trees, or fences, as a result of this survey, and no steps were ever taken by the town authorities to compel a change in the location of the road to conform to such survey, if it was in fact intended thereby to change the location of the highway in any respect.

The plaintiff bases this action upon the foregoing resolution of the board of supervisors, and upon the survey last referred to, and claims that according to this survey the center of the highway is within about one rod of the southerly row of trees, and is about two rods from the northerly row of trees. It is conceded by all the surveyors called in the case that there is an error in the record of this survey with respect to the course over the farm in question, and that the center line of the highway cannot be determined from the record of this survey alone. Following the course as given by the record of this survey would carry the highway entirely south of the south row of trees, so that on the easterly side of the defendants' farm no part of the highway would be between these rows of trees, or where the highway has been located and used by the public for upwards of 30 years, for there has been no public travel, excepting between these rows of trees, for more than 30 years. The surveyors called by the plaintiff, however, conceding the error in the record, say that by other references, not official, they located

a monument within the lines of the present highway between the rows of trees, and within about one rod of the southerly row of trees, which answers the description of the monuments set at the time of making that survey, and they believe it to be the monument set by the surveyor at the end of the course on which he ran the center line of the highway across the premises in question. The difficulty with this conclusion is that the length of that course from the starting point to such monument does not correspond with the record length of the course, and the only witness who saw the monument set, the highway commissioner who assisted the surveyor in doing the work, says that the course was run midway between the rows of trees, and that the monument was set about midway between the rows of shade trees which had been planted and growing there for about 10 years at that time. Taking all of the facts into consideration, and bearing in mind the purpose of the public authorities as shown by the resolution to lay out the highway as a four-rod road as nearly as practicable as it then existed, I cannot find that the location of the highway was changed by the survey of 1877, and consequently it is unnecessary to pass upon the validity of the action of the board of supervisors, and of the highway commissioners thereunder, the only authority for which was chapter 482 of the Laws of 1875. The action of the board of supervisors and highway commissioners would, in any event, be ineffectual for taking any land theretofore dedicated to or acquired by the public for highway purposes, as the landowner had no notice of the proceeding and no compensation was awarded for the land. The public authorities could do no more than ascertain and describe the highway as it actually existed at the time, without taking eminent domain proceedings to acquire any additional lands that might be needed. People v. Dains, 38 Hun, 48; Talmage v. Huntting, 29 N. Y. 447; People v. Judges, 24 Wend. 491; Ivory v. Town of Deerpark, 116 N. Y. 482, 22 N. E. 1080.

I am of the opinion that the trees in question were lawfully planted, and that the highway was dedicated by the owner of the fee, subject to his ownership of the trees and his rights to maintain them as highway shade trees. Having been lawfully set and maintained, they are neither encroachments nor obstructions, within the intent and meaning of the statute. The court is only authorized, under this statute, to compel the removal of an encroachment and obstruction where the owner or occupant could be fined for not complying with the order of the highway commissioner, and where the highway commissioner would have the right, if he saw fit, to remove the encroachment or obstruction, without first bringing suit. The authority was conferred upon the court to settle controverted questions of facts seriously controverted, and the highway commissioner becomes liable for trespass in acting upon his own belief as to the facts. It was also undoubtedly intended to authorize the court to pass upon questions of law as to the legal existence of the highway, and as to whether the obstruction or encroachment complained of is, in fact, under the law, an obstruction or encroachment; but, in my opinion, it was not designed to confer

power upon the court to compel the removal of shade trees which have been lawfully planted in the highways. If public convenience requires their removal, the public authorities must first, by an appropriate proceeding, condemn the same, and see that compensation is awarded to the owner. This decision states concisely the grounds upon which the issues herein have been decided, and, without formal separate findings, judgment may be entered dismissing the complaint upon the merits, with costs.

Complaint dismissed, with costs.