Argued June 17; affirmed July 7, 1936

UMPHLETTE *v.* CITY OF SILVERTON ET AL.

(59 P. (2d) 244)

*Custer E. Ross,* of Salem, for appellant City of Silverton. °

*Glenn R. Jack,* of Oregon City (Butler & Jack, of Oregon City, on the brief), for appellants. I. D. Worden and Emma J. Worden.

*Francis E. Marsh,* of McMinnville (Vinton, Marsh & Marsh, of McMinnville, on the brief), for respondent.

BAILEY, J. This action was instituted by Evelyn R. Umphlette against the City of Silverton and I. D. Worden and Emma J. Worden, his wife, to recover damages for personal injuries suffered by plaintiff in falling on the sidewalk in front of the Wordens' property in Silverton. From a judgment in favor of the plaintiff and against all the defendants the latter prosecute this appeal.

The Worden property which is here involved is situated on the west side of north Water street (hereinafter to be mentioned merely as Water street) about 250 feet northerly from the intersection of that thoroughfare and Main street, in one of the busiest parts of Silverton. The building thereon is occupied by the Rainbow restaurant. In front of the restaurant, set into the sidewalk close to the building, is a trapdoor consisting of two parts, each about three feet wide and five feet long, meeting in the middle of the opening at right angles to the wall of the building. There is a space of about four and one-half feet between the outer edge of the trapdoor and the outer edge of the sidewalk.

This double door is made of sheet iron and at the time of the accident to plaintiff was smooth on the upper side except for small spaces occupied by hinges and handles. When the mishap occurred rain was falling and mud had been washed and tracked upon the

sidewalk and trapdoor from a pile of earth alongside an excavation in the street, made by the city.

The Silverton water system is owned and operated by the city. During the latter part of November, 1933, the city began replacing the wooden pipe line in Water street with metal pipes, in front of the Worden property. In doing so a ditch 26 inches wide and 38 inches deep was excavated in the street, parallel with and nine feet distant from the sidewalk. The earth therefrom was piled about three feet high between the ditch and the sidewalk, and at times rain washed it over the curb line and onto the sidewalk, covering the latter with a slippery deposit. At intervals along Water street the city had constructed pedestrian and loading lanes from the sidewalk to the pavement beyond the ditch. One of these pedestrian lanes was some distance north, and another one some 20 feet south of the trapdoor.

The mishap which gave rise to this litigation occurred at approximately 8 o'clock in the evening of December 13, 1933. The plaintiff, then about 20 years of age, had been in Silverton only since September of that year, when she began teaching in one of the public schools of the city. At the time of the accident plaintiff had left her lodging to go in a southerly direction approximately half a mile to a drug store at the corner of Water and Main streets on the same side of Water street as the Worden property. She and her sister walked on the east side of Water street until within about three blocks of the Worden property, then because the sidewalk ended at that point they crossed to the west side of the street, before reaching the excavation. In passing the Worden premises the plaintiff and her sister walked as near as practicable to the building because of the thick coating

of mud on the outer edge of the sidewalk, and as they stepped upon the north half of the trapdoor, with their weight upon it that half sagged at the closing, an inch or so below the other door. Plaintiff caught her toe between the two doors and was thrown slightly off balance. In attempting to regain equilibrium she stepped forward upon the south door and because of its excessively slippery condition she completely lost her balance, slid and fell on the sidewalk. A milk bottle which she was carrying in her left hand was broken by the fall and her left hand and wrist were severely cut and injured by the shattered glass.

At the time of the accident it was raining and plaintiff's sister was carrying an umbrella. She had lived at Silverton for at least two years and knew of the tendency of the trapdoor to sag in the middle, but plaintiff did not know of it. Both young women, however, knew at that time that the sidewalk on Water street along the course of the excavation was slippery because of the mud washed upon it by the rain, and they were walking in a careful and cautious manner. As they approached the trapdoor, plaintiff's sister said, "Be careful here", without mentioning what danger threatened.

In their motions for involuntary nonsuit and for a directed verdict, the defendants urged that the plaintiff's own testimony showed that she was guilty of contributory negligence. It is argued that she knew that north Water street, because of its muddy condition, was unsafe for pedestrians and that she either should have recrossed to the east side of that street before reaching the Worden property or should have taken some other route in going to the drug store.

The evidence discloses that there was a considerable amount of traffic along Water street in the busi-

ness section of the city; that plaintiff followed the course generally taken by those in her part of the city in going to and from Main and Water streets; and that plaintiff did not know of the dangerous condition of the trapdoor. The jury might have found from all the evidence that the defective closing of the trapdoor, the smoothness of the surface of the door and the mud on the door and adjoining sidewalk all combined to cause plaintiff's injury. It can not be said as a matter of law that any one of these factors alone was the sole cause of the accident. Nor can it be said that the plaintiff, by proceeding along Water street after she knew of its muddy state but without knowledge of the dangerous condition of the trapdoor, was as a matter of law chargeable with contributory negligence. The sagging of the double door was not discernible except when one-half was stepped upon, and when plaintiff did step upon it it was too late for her to prevent the result which followed. Under the facts in the case it was a question for the jury, whether in the light of all the attendant circumstances an ordinarily prudent and careful person would have pursued the course followed by plaintiff, and whether plaintiff exercised reasonable care, commensurate with the danger to be apprehended: *Large v. St. Helens*, 140 Or. 564 (14 P. (2d) 628); *Mathews v. La Grande*, 136 Or. 426 (299 P. 999).

■ There is sufficient evidence in the record to warrant a finding by the jury that there was mud covering the trapdoor and the adjoining sidewalk at the time of plaintiff's accident; that it was washed there by the rain, from a pile of earth left in the street by the city; and that the city was negligent in piling the earth there and not preventing it from being washed upon the sidewalk.

■ It was not necessary to prove in this case that the City of Silverton had actual knowledge that the sidewalk and trapdoor at the time of the accident were covered with mud, if that condition existed because of the piling of earth along the curbing and the washing of such earth upon the sidewalk by heavy rain, for the reason that the placing of excavated earth in that position was the affirmative act of the city. It is admitted by the city that if it created the unsafe condition, no notice to it of such condition was necessary. There was, however, ample evidence in the case to show that the city had actual knowledge that the dirt was being washed or deposited upon the sidewalk. The superintendent of the city water commission testified that he daily inspected the sidewalks along the course of the excavation and that he was continually having workmen open up a passageway between the curbing and the pile of dirt, and was having the sidewalks washed and swept. There was other evidence produced showing that business firms located on that part of Water street frequently hosed and scrubbed the sidewalks during the time that the pile of earth remained in the street. There was further evidence that at the time of the accident earth from the excavation was lying next to and higher than the curbing and was being flooded upon the sidewalk by action of the rain, and that the outer edge of the walk was much more thickly coated with mud than the inner part.

■ The mayor and one of the councilmen called as witnesses for the city testified that they knew that the double door set into the sidewalk was made of sheet iron and was smooth and slippery when wet or muddy and had been much more slippery at the time of the accident than it later was, after small

knobs were welded upon the street surface of the door. They further testified that they were aware that part of the door sagged when anybody walked upon it. All or practically all the other witnesses called also testified as to the smoothness of the door surface.

Under the provisions of the charter of the city of Silverton the city council is given control and supervision of the construction, maintenance and repair of the sidewalks and streets of the city; and there was sufficient evidence introduced from which the jury could have found that the defective condition of the trapdoor existed for such a length of time before the accident that the municipal authorities knew or with the exercise of reasonable care and diligence could have known of its existence and could have remedied it: *Cartano v. Athena*, 90 Or. 586 (176 P. 789); *Mathews v. La Grande*, supra; *Large v. St. Helens*, supra.

██ It matters not, however, in order to establish liability on the part of the city, whether or not the city knew or should have known the condition of the trapdoor in the sidewalk and failed to remedy it, if the city was negligent in piling earth from the excavation where it did pile it, and the washing of such earth upon the sidewalk resulted in a muddy condition which was a concurrent cause of plaintiff's injury: *Hansen v. Bedell Co.*, 126 Or. 155 (268 P. 1020). The city in doing this excavation was acting in its proprietary capacity and should be governed by the same rules of conduct and held to the same responsibility for injuries resulting from its negligence as would a private corporation: *Butler v. McMinnville*, 126 Or. 56 (268 P. 760, 59 A. L. R. 381); *Hise v. North Bend*, 138 Or. 150 (6 P. (2d) 30).

██ The city of Silverton was incorporated by act of the legislature passed February 16, 1885. By special

act of February 18, 1891, the legislature granted that municipality a new charter, which has subsequently been amended by vote of the people of Silverton. No exemption of the city from liability for injuries caused by its negligence is contained in the charter in effect at the time of the accident. It is nevertheless contended by the city that its liability for injuries caused by its negligence is, by § 56-412, Oregon Code 1930, limited to $100. That section of the code was a part of an act of the legislature passed in 1893 (Laws of Oregon, 1893, page 119, § 34) entitled, "An Act for a General Law for the Incorporation of Cities and Towns in the State of Oregon". The city of Silverton was not incorporated under the provisions of that law, but was incorporated prior to its enactment, by special charter granted by the legislature. The provisions of that section limiting the liability of cities incorporated under the 1893 act do not apply to cities functioning under special charters: *Albany v. McGoldrick*, 79 Or. 462 (155 P. 717); *Colby v. Medford*, 85 Or. 485 (167 P. 487). That the limitation of liability to $100 contained in § 56-412, supra, has never been construed as applying to cities operating under special charters granted by the legislature and amendments of charters by the voters of the respective municipalities, is evidenced by the numerous decisions of this court, including those hereinbefore cited, holding municipalities liable for damages caused by their negligent acts in cases in which no limitation of liability is contained in the respective charters themselves.

■ The accident to plaintiff happened, as hereinabove stated, on December 13, 1933. On March 27 of the following year the attorneys for plaintiff notified Mr. Worden that they had been employed by the plaintiff to represent her in a claim for damages against

him and the city of Silverton, arising out of that accident, and requested an opportunity to negotiate for a settlement. In June of that year the plaintiff instituted action against the defendant city alone, and thereafter the defendants Worden were notified of the action and requested by the attorney for the city to defend.

On March 21, 1935, the defendants Worden executed and recorded six deeds from themselves to Mrs. Worden's sister, conveying to her all the real property which the grantors owned. There was, however, one tract of land remaining in the name of Mr. Worden which he testified he was holding for his sister-in-law. He was questioned by counsel for plaintiff, over the objection of his counsel, concerning those conveyances, and error is predicated by the defendants Worden upon the overruling of such objection, and upon the admission in evidence of certified copies of said deeds of conveyance. The object in introducing such testimony and exhibits was, as stated by counsel for the plaintiff, to show a guilty conscience and a recognition of liability on the part of the Wordens. No error was committed in permitting the introduction of this evidence: *Mattechek v. Pugh,* 153 Or. 1 (55 P. (2d) 730), and authorities therein cited.

■ In instructing the jury the court explained to it the issues raised by the pleadings and stated what the allegations of the complaint were. The defendant city assigns as error what it claims to be one of the instructions to the jury. The error alleged is that the court assumed certain facts to exist, question as to which should have been submitted to the jury for its determination. The statement complained of was part of the court's explanation to the jury concerning what comprised the allegations of the complaint.

The city's sixth assignment of error is based upon an exception taken by the city to an instruction consisting of more than 250 words, given by the court. The Wordens also assigned the giving of this instruction as error. The only exception taken by either the corporate or the individual defendants at the time of the trial was a general one, without pointing out to the trial court any specific fault in the court's charge. It is now admitted by the city that the first part of the instruction is a correct statement of the law, but it is claimed that the instruction does contain language which is beyond the issues in the pleadings, and that some of the phrasing is not sufficiently definite. We are not inclined to give much weight to this objection, raised for the first time on appeal, especially since it is apparent that the defendants were not prejudicially affected by it.

The city also objected to the giving of another instruction and the refusal of the court to give one of its requested instructions. No error was committed in this respect.

Although the city of Silverton was granted authority and was charged with the duty of maintaining the sidewalks on its streets in reasonable repair, nevertheless the defendants Worden were required to exercise reasonable care to keep the trapdoor which had been installed for the benefit of their premises in a reasonably safe condition for the use of the public as part of the sidewalk: annotation, 62 A. L. R. 1067. The individual defendants knew, or should have known by the exercise of reasonable care, of the unsafe condition of this trapdoor.

The judgment appealed from is affirmed.

Campbell, C. J., and Bean and Rand, JJ., concur.